UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MAURICE CEASAR
      Plaintiff

vs.

FEDERAL BUREAU OF PRISONS et al
      Defendants

:
:
:
:
:
:
:
:
:
:
:

Civil Action No. **07-1191-RMC**

# RECEIVED

### JUL 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**SUPPLEMENTAL TO CASE 07-1191-RMC
IN LIEU OF F-7641-81 EXHIBITS AND ORDER
FRCP (UNDER RULE 15)**

To: Honorable Judge Rosemary M. Collyer

In view of my Civil Action Case for **F-7641-81** Criminal Case. Obviously something is going on that I'm not to comfortable with when it comes to me finishing out the sentence of 4 to 20 years on parole and while Incarcerated on numerous violations. Your Honor, I come truthfully to you with a request of forgiveness of my foolish criminal past. What appears to be the problem I am having is that the Federal Bureau of Prisons and Designation Sentence Computation Center has placed 3,688 Days back on the 4 to 20 years sentence that was given in 1983 by Honorable Judge Tim Murphy which after 20 years of getting this sentence it should be expirated out and Docket No. **F-7641-81** should not have any more time on it or shall I be given a new sentence in 2007 under that **F-7641-81** Docket number without consentment of a Judge's Ruling that I was Re-sentence.

1

Your Honor, this is not the case that a Judge ordered me a new sentence; someone who are in operations of the input and output of criminal data on either, ex-offenders parolees, probation, parole violators and new criminal cases has took F-7641-81 **Docket No.** And placed more time on it...It is obvious that something has triggered the Designation Sentence Computation Center to carry out this matter of Computation due to that service of sentence on 8-15-83 to now being the only Docket Number F-7641-81 having a large amount of time on it, in which I have done my time all 20 years (twenty) years of it under concurrent sentence and parole.

Your Honor, I can prove that they have altered criminal computation under my name in there (data base) and now sent it through to other criminal and federal agencies who may think as you may think that I have not completed my 4 to 20 years given in 1983, but I have. The changing of data in there F.B.O.P. Computation Center computers has made a mess of many Inmates time that they owed. I know that some who has not receive relief as to my situation, is still an issue. And D.S.C. they made it more confusing intentionally by adding 3,688 Days on top of the 20 years I've done already; that now has me doing (30 years) on F-7641-81, which is not right of the **J & C** original sentence that was originally given by Honorable Judge Tim Murphy on 8-15-83. He only sentence me to 4 to 20 years on F-7641-81 **case.** Then in 1986 Honorable Judge Reggie Walton reduced it on 12-18-86 to 42 months to 20 years taking only 6 months off the front of the original sentence. In my own words (Your Honor) their have been failure to seek relief from this Judgement and Commitment after the 20 years time has expired in 2003.

After the expiration of **F-7641-81** it has been Re-approached by the U.S. Parole commission and F.B.O.P. to Re-sentence me on new sentence by there computation that is inaccurate to the standards of criminal law and justice which this matter should be adjudicated) by a Judge who holds the authority and power as a Judge of the Courts.

It appears again that the turpitude of authority lingers on in certain Federal Jurisdictions of the Criminal Computation and Designation Data Systems, which over looks the right of liberty after a prisoners has served his sentence, in most ways-Incarcerated and on parole. Served to his amount that these Honorable Judges has given us in no less than-no more than-in Superior Court 1981 sentencings. Why is it that after a long 20 years of this sentence, I should be subjected to do 3,688 Days after the computation of expired sentence Incarcerated. This should not be happening without a Judge's order after the fact that **F-7641-81 case Docket** No. is a closed and expired case. And that it is being Illegally Re-opened to hold me to be Incarcerated until 2015, than allowing this to be over. May this be ordered closed finally by this Court Judge. Especially after you have An expert computation examiner from the out side to review my **F-7641-81 sentence amount.**

Enclosed: (A) Are Documents from the D.C. Superior Court Records Department from Ms. Shepard/Mr. Wesley King Deputy Clerks, to show closure of my past criminal cases.

(B) also, copy of Presentence Report Parole and Probation Disposition Documents (12) through (18) pages concerning **F-7641-81.**

(c) Also, copy of Pretrail Service Report of 5/10/06 with case **F-7641-81** Document Concerning close/revoke data and release 11/11/05 data.

(D) Also, copy of Judgement and Commitment 12/18/86 Honorable Judge Reggie Walton reduction. May these documents become apart of this Civil case as **Exhibit (A) thru (I)** as well of my Department of Correction and F.B.O.P. records ordered, and examine by an outside expert for computating sentencings and parole time-to show Proof of there "Errors".

(E) Also the Plaintiff (wishes) to base his Civil Action Case under the **Sellers v. Bureau of Prisons**, 959. F.2d 307 (D.C.Cir.1992) as an **Exhibit** to show that the Incorrected Information is very misleading in the Record Central Files to Keep Accuracy of **F-7641-81** time and not allowing the docket number to expire respectively as time has been completed after 2003. F.B.O.P. has this thing, of over riding and abusing authority as both federal justice Department agencies cause the language of turpitude to the criminal system under their disregards to obey by Federal Court Rules and Procedures; however, take lead over the Courts intentionally as well deregard the time limit for Docket No. **F-7641-81** has expired.

## CERTIFICATE OF SERVICE

I, here by ask this Honorable Court to Honor under F.R.C.P. Rule 15 supplemental to case **07-1191-RMC** in lieu closed case **F-7641-81 the Exhibit,** to support that this case Docket No. is being illegally used to keep me in the system until 2015, after some 23 years over the amount time of the 4 to 20 years sentence given by Honorable Judge Tim Murphy on 8-15-83. In which I ask on this ___16^th___ Day and ___July___ month 2007. That these **Exhibit** be a said part of Civil Action **07-1191-RMC** case hereforth.

Respectfully yours,

Maurice Ceasar #09747-007

4

U.S. Department of Justice
Federal Bureau of Prisons

| | |
|---|---|
| Number | 068-93  (5820) |
| Date | March 15, 1993. |
| Subject | Maintenance of Inmate Files |

# Operations Memorandum

Cancellation Date  March 15, 1994

1. **PURPOSE.** The purpose of this Operations Memorandum is to advise Unit Team staff members of a recent case concerning staff response to a claim by an inmate that his central file contained incorrect information.

2. **BACKGROUND.** In _Sellers v. Bureau of Prisons_, 959. F.2d 307 (D.C. Cir. 1992), the court held that the Bureau of Prisons must maintain accurate records of information which are capable of being verified. The case involved an inmate who was challenging information in his file, including a presentence report reference to an alleged bank robbery. The inmate contended that the bank robbery charge had been dismissed, and that its inclusion in the presentence report had resulted in the denial of parole and adverse determinations regarding custody and security classifications, job and quarters assignments, and the opportunity to earn money and good time. The Parole Commission had noted in the inmate's file that he disputed the information in his record; the Bureau of Prisons apparently maintained the challenged information in the record without comment, despite the fact that the probation officer had written a letter indicating that the charge had been dismissed.

The court held that if an agency willfully or intentionally fails to maintain accurate files, and those records then result in an adverse determination toward an individual, the agency will be liable for money damages. The rule of the case is that "the agency must take reasonable steps to maintain the accuracy of the information to assure fairness to the individual." _Sellers_ at 312. The _Sellers_ court held that an agency does not meet the requirements of the Privacy Act simply by noting that the information is disputed. If the court were to find a willful or intentional failure to maintain accurate records, the agency could be liable for

**EXHIBIT A**

(1)

money damages to the inmate. Because inmates from all over the country may file Privacy Act suits in the District of Columbia, the Sellers case will affect all of our institutions. A final determination has not yet been made in Sellers regarding whether the Bureau's actions will be considered willful or intentional and therefore result in the granting of monetary damages to the inmate. The procedures recommended below in this Operations Memorandum are intended to minimize the chances of such award resulting from future challenges.

3. ACTION. Unit team staff need to take reasonable steps to ensure the accuracy of challenged information in an inmate's central file, particularly when the information challenged can be verified. Initial reasonable steps include requiring specific action from the inmate, such as providing documents which support a challenge to the information in the files. The inmate can also be asked to provide the names of people to contact regarding the challenged information.

If an inmate is able to provide such information in support of a challenge, unit staff have a duty to investigate and to take steps to ensure the correction of any inaccuracies discovered. Once a determination can be made by Bureau staff that information in an inmate's central file is incorrect, that information must not be used by staff. For example, in a situation like Sellers where the inmate challenged the Presentence Report, unit staff should not change the report but should inform the probation officer that the report has been challenged. If the probation officer confirms that the information in the report is inaccurate, staff should insert a note to that effect in the file in order to ensure that no decisions affecting the inmate are based on the discredited information. Staff should also request an updated Presentence Report from the probation officer. These procedures will be incorporated into the Central File Program Statement at the next annual review.


Patrick R. Kane
Assistant Director
Correctional Programs
Division

Wallace H. Cheney
Assistant Director
Office of General Counsel

Exhibit (B)   Four pages

(1)

---

**W. Foster Sellers, appellant v. Bureau of Prisons, et al., appellees**
UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT
952 F.2d 1423; 1992 U.S. App. LEXIS 266
No. 90-5197
**January 14, 1992, Decided**

---

## Editorial Information: Subsequent History

Rehearing granted March 27, 1992; Reported at 1992 U.S. App. LEXIS 5659.

Vacated March 27, 1992; Substituted Opinion of March 27, 1992, Reported at 1992 U.S. App. LEXIS 5369.

## Editorial Information: Prior History

Appeal from the United States District Court for the District of Columbia.

**Counsel**        *Julie M. Carpenter* (appointed by the Court) with whom *David W. DeBruin* was on the brief, for amicus curiae urging that the judgment of the District Court be reversed. *W. Foster Sellers*, pro se, also entered an appearance for appellant.

*William J. Dempster*, Assistant United States Attorney, with whom *Jay B. Stephens*, United States Attorney, *John D. Bates* and *R. Craig Lawrence*, Assistant United States Attorneys were on the brief, for appellees.

**Judges:** Before: Mikva, Chief Judge, Wald and Buckley, Circuit Judges. Opinion for the Court filed by Chief Judge Mikva.

### Opinion

**Opinion by:**        MIKVA

{952 F.2d 1424} Mikva, *Chief Judge*: Appellant, W. Foster Sellers, filed an action under the Privacy Act against the Bureau of Prisons and the Parole Commission claiming that the agencies maintained incorrect information in his inmate files. Contending that the agencies violated sections (e)(5), (g)(1)(C), and (g)(4) of the Act by using the incorrect information in determinations adverse to him, Mr. Sellers sought amendment of his records and money damages. Relying on this Court's decision in *Doe v. United States*, 821 F.2d 694, 701 (D.C. Cir. 1987), the United States District Court for the District of Columbia granted appellees' motion for summary judgment, holding that the agencies satisfied the requirements of the Privacy Act simply by noting in Mr. Sellers's prison records that he disputed the information contained in the records. We reverse the district court and remand for further consideration of Mr. Sellers's claims. The agencies do not meet the Act's requirements by indicating that the appellant disputes the information in his prison files. The agencies and the court below must review *de novo* the allegedly erroneous information contained in Mr. Sellers's files to determine whether it is correct.

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to th restrictions and terms and conditions of the Matthew Bender Master Agreement

## II. CONCLUSION

*Mr. Sellers is entitled, under the Privacy Act, to a de novo* review of his records *both* at the Parole Commission and the Bureau of Prisons to determine whether the challenged information is correct. Then, if he can show that the agencies wilfully or intentionally failed to properly maintain their records and, as a result, made determinations adverse to him, he has stated a claim under sections (e)(5), (g)(1)(C), and (g)(4) of the Privacy Act and is entitled to money damages. We reverse, therefore, and remand to the district court for further consideration of Mr. Sellers's claims consistent with this opinion.

*So Ordered.*

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to th restrictions and terms and conditions of the Matthew Bender Master Agreement

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

United States of America
District of Columbia

*AMENDED*

Case No. *F 1641 - 81 COE*

vs.

PDID No. *348-504*

*Maurice Ceasar*   *"IN - JAIL"*

## JUDGMENT AND COMMITMENT/PROBATION ORDER

The above-named defendant having entered a plea of ☒ Not Guilty ☐ Guilty to the Charge(s) of *Assault with intent to commit Robbery while Armed (three counts)*

and having been found guilty by ☒ Jury ☐ Court, it is hereby ORDERED that the defendant has been convicted of and is guilty of the offense(s) charged, and is hereby SENTENCED to *Not less than forty two (42) months nor more than twenty (20) years on each count respectively. Said sentences are to run concurrently.*

☒ ORDERED that the defendant be committed to the custody of the Attorney General for imprisonment for the period imposed above.

☐ ORDERED that the defendant be committed to the custody of the Attorney General for treatment and supervision provided by the D.C. Department of Corrections pursuant to Title 24, Section 803[b] of the D.C. Code [Youth Rehabilitation Act 1985].

☐ ORDERED that the defendant be placed on probation in charge of the Director, Social Services Division, and it is further ORDERED that while on probation the defendant observe the following marked conditions of probation:

☐ Observe the general conditions of probation listed on the back of this order.

☐ Obtain a job as soon as possible or continue your present employment.

☐ Cooperate in seeking and accepting medical, psychological or psychiatric treatment in accordance with written notice from your Probation Officer.

☐ Treatment for ☐ alcohol problems ☐ drug dependency or abuse as follows:

_____

☐ Restitution of $_____ in monthly installments of $_____ beginning

_____ (see reverse side for payment instructions).  The Court

will distribute monies to _____

☐ _____

Costs in the aggregate amount of $_____ have been assessed under the Victims of Violent Crime Compensation Act of 1981, and ☐ have ☐ have not been paid.

ORDERED that the Clerk deliver a true copy of this order to appropriate authorized official(s) and that the copy shall serve as the commitment/order for the defendant.

*12/18/86*
Date

*Reggie B. Hall*
Judge

Certification by Clerk pursuant to Criminal Rule 32

☒ *12/18/86*  A TRUE COPY  *JUN - 6 2007*
Date                 TEST

*Owen J. Bo___*
Deputy Clerk

By: *W. Foley*
Clerk, Superior Court of the District of Columbia

Original — Court
Blue — Jail
Green — _____
Canary — Social Services

_____'s Office
U.S. Attorney/Corporation Counsel
_____
Defense Attorney
Bureau of Prison's

Form CDU10-1040/Feb. 86

A6—p1760 wd-60

*Exhibit C ____ 1 page*

Close  Open  Save  Print    Search

Search Criteria
 Case Number
 Status                                          Sort        Ascending

Search Results
 Case Number          Full Name                    Status          Filed

| Case Number | Full Name | Status | Filed |
|---|---|---|---|
| 1981 FEL 007641 | CEASAR, MAURICE N | Closed | 12/31/1981 |
| 1988 CMD 007262 | CEASAR, MAURICE N | Closed | 06/24/1988 |
| 1995 CMD 009760 | CEASAR, MAURICE N | Closed | 08/28/1995 |
| 1995 FEL 007182 | CEASAR, MAURICE N | Closed | 08/28/1995 |
| 1996 CMD 002749 | CEASAR, MAURICE N | Closed | 03/16/1996 |
| 1998 CMD 006639 | CEASAR, MAURICE N | Closed | 05/07/1998 |
| 1998 FEL 008487 | CEASAR, MAURICE N | Closed | 11/21/1998 |
| 1998 FEL 008456 | CEASAR, MAURICE N | Closed | 11/21/1998 |
| 2001 FEL 007990 | CEASAR, MAURICE N | Closed | 12/14/2001 |
| 2002 FEL 000341 | CEASAR, MAURICE N | Closed | 01/16/2002 |
| 2004 CMD 008334 | CEASAR, MAURICE N | Closed | 08/09/2004 |
| 2006 CF3 009216 | CEASAR, MAURICE N. | Pending Sentencing | 05/10/2006 |
| 2006 CF3 009217 | CEASAR, MAURICE N | Pending Sentencing | 05/10/2006 |

*Has not been updated as of 3/1/07*
*M. Mills*
*Dep. Clerk*

ExHiBiT D — 1 page

## PROBATION/PAROLE/PRE-DISPOSITION ADJUSTMENT:

The defendant initially came to the attention of the criminal justice system in the year 1983 with an emphasis on numerous property related offenses. He has also been afforded community based services on numerous occasions that terminated with little success.

On August 11, 1988, the defendant was sentenced to six months unsupervised probation following his conviction for                    ., Docket M7262-88.

On September 2, 1993, the defendant was released to three years supervised probation following conviction in F-1636-90 (Burglary II). The original sentence was four years - twelve years, two years – twelve years suspended three years probation. Additionally, the defendant was placed on three years supervised probation in F-3113-93 (Attempted Burglary). The original sentence was three years probation. As a result of continued involvement in criminal activity, supervision was revoked in both cases on February 8, 1994. He was sentenced to one year in jail at that time.

On January 5, 1994, the defendant was sentenced to 2-6 years, ESS, three years probation following his conviction for Burglary/ Second Degree), Docket F10420-93. As a result of an unsatisfactory adjustment to supervision, the defendant's supervision terminated unsuccessfully on August 15, 1996. The defendant incurred another conviction, Docket F-8487-98, and was sentenced to five months – fifteen months on April 30, 1999. He was released to parole supervision on August 24, 2001. Supervision in that matter was revoked on October 26, 2004.

The defendant is currently committed at the Correctional Treatment Facility, pending sentencing in the Instant Offenses. While is was learned that the defendant was not candid with regards to information cited in his family history, he appeared cooperative, providing this Officer with the information necessary to complete this report, NCIC and Wales do not reflect any outstanding warrants and/or detainers.

## EMPLOYMENT HISTORY:

The defendant reported sporadic employment from November 2005 to May 2006 with Aramark Food Services in Northwest Washington, DC. He was employed in a Maintenance/ Food Service position, earning approximately $7-11.00 per hour. The defendant also reported that he held a part time position with Executive Personnel Inc. in Northwest Washington, DC. He was employed from the year 2004 to 2006 as a Landscaper/Maintenance worker. The defendant reported that he lost these positions due to his incarceration in the Instant Offenses. A telephone

C:\Program Files\Neevia.Com\Document
Converter\temp\0qerdamuzihsyienavfwvbi5_289236_ReportSign.rtf

Exhibit - F

c/o Parole/probation
In Lieu of Highlighted
Paragraphs 1-thru-8 pages

Court Services and Offender Supervision Agency

Page 17

8/9/04, 3/15/04, 3/8/04, 12/31/03, 12/15/03, 12/8/03, 1/16/02, 12/14/01, 10/29/01, 10/24/01, 10/17/01, 10/10/01, 10/3/01, 9/24/01, 9/17/01, 9/10/01, 9/10/01, 8/27/01, 11/21/98, 3/16/96, 8//28/95-positive for cocaine

Records also reflect that the defendant also tested negative during different intervals from the year 1993 to 2006 on approximately 23 occasions. His last negative test was in 2004. ✳

## Other Significant Information

No significant information was related.

## EVALUATIVE SUMMARY:

The defendant, Maurice Ceasar, stands before the Court for sentencing after having pled guilty to two counts of Burglary and Second Degree Theft. Available criminal records reflect a lengthy history of arrests and conviction in this jurisdiction dating back to 1983. Numerous terms of probation and parole supervision are also indicated with all having ended unsuccessfully. With regards to his participation in these cases, the defendant admitted culpability relating that his substance abuse problem is the enumerating factor for his engagement in illegal crime. This seems to suggest that he is in the contemplation phase of change as he accepts responsibility for his actions, but has not taken any steps toward altering his behavior in a positive fashion.

The defendant is a life-long District of Columbia resident, who was reared in a "middle class" two-parent household. His mother died when the defendant was approximately fourteen years old. However, his father along with the assistance of his older sister reportedly cared for the family. While the defendant has amassed at least two years of college and presumably several marketable skills, the criminogenic factors as a long standing addiction to illegal drugs and at this juncture, no substantial employment history continue to influence his antisocial attitude. As a result, the defendant is virtually homeless.

It is apparent that throughout his life and his involvement with the criminal justice system, the defendant has been given opportunities to lead a productive and crime-free lifestyle given his upbringing and opportunities to address his participation in at least two drug treatment programs. However, he has failed to do so. Moreover, the defendant's extensive criminal history for these types of offenses coupled with failed attempts to comply with community based services suggests that he is a serious threat and cannot be trusted in the community. Based upon the aforementioned information, incarceration is respectfully recommended.

C:\Program Files\Neevia.Com\Document
Converter\temp\0qerdamuzihsyienavfwvbi5_289236_ReportSign.rtf

interview with the defendant's friend, Mr. William Michaels verified the information that he provided.

### A pre-sentence report prepared in the year 2002 cited the following information:

The defendant was employed from June to December 2001 with Executive Personnel Services, Inc. in Northwest Washington, DC. He further reported that he worked at Sunrise Restaurant, Ruppert Realtors, and Capital Court Reporters between 1987 and 1997. He states he has skills in transcribing forms and other clerical work. Additionally, the defendant states he has been employed in the music industry, working at a music studio, preparing demonstration tapes.

## SOCIAL HISTORY:

**Sources of Verification;** Ms. Vanessa Garrett, defendant's sister, pre-sentence report prepared in the year 2002

### Family History

The defendant was born on February 8, 1961 in the District of Columbia to the union of Ms. Virginia Boyd Ceasar and Mr. Gussie Ceasar. He reported that his mother was an alcoholic who died in 1973 from complications resulting from excessive alcohol usage. She passed when the defendant was 14 years of age. The defendant's father, formerly employed with the District's Sewer Department died in the year 1987, after contracting cancer of the lungs. He passed when the defendant was 19 years old. The defendant related that both parents had a problem with alcohol; however, neither parent was characterized as an illegal drug user.

The defendant has several siblings whose ages range from 38 to 60; Ethel Boyd, Robert Ceasar, Vanessa Garrett, Rozena Ceasar, Claudette Harris, Alonzo Ceasar and Annette Gray. Reportedly, the defendant is the only sibling known to use drugs and/or has been criminally involved.

The defendant characterized his childhood as stable. He and his siblings were raised in both the District and Prince Georges County Maryland. The defendant related that after his mother's death, he and his siblings resided with his older sister, Vanessa Garrett, due to his father's inability to care for a family of eight children. The defendant related that prior to his mother's demise; neither she nor his father provided adequate parental supervision due to their problems with alcohol.

The defendant's sister, Ms. Vanessa Garrett did not verify the information that he provided. She reported that the defendant was raised in a "middle class" home environment. She further reported that their mother died from a heart attack and that neither parent drank alcohol excessively. Ms. Garrett related that following their mother's death, their father remained instrumental in their upbringing. He did not abandon the family as the defendant professed. According to Ms. Garrett, the defendant possesses several skills. He writes music and is a graphic artist. She believes that her brother's usage of illegal drugs is the enumerating factor for his failure to lead a productive lifestyle.

C:\Program Files\Neevia.Com\Document
Converter\temp\0qerdamuzihsyienavfwvbi5_289236_ReportSign.rtf

Court Services and Offender Supervision Agency

Page 15

## Education and Training

The defendant reported that he graduated in the year 1981 from Dunbar High School. He reported that he received a scholarship to attend college, where he studied at the University of the District of Columbia for approximately one month. Subsequently, the defendant studied for approximately two and a half years at the University Of Hartford, Connecticut. The defendant also reports having a Certificate of Accomplishment from Georgetown University Law Center, where he studied the District of Columbia Street Law.

*On September 12, 2006, the defendant was referred to the VOTEE Unit for a vocational treatment assessment. The following information was obtained from that assessment:*

Mr. Ceasar states that he has an Associates of Arts degree, was employed as a maintenance worker and is interested in obtaining and maintaining employment. Therefore, it is recommended that the defendant pursue employment in the maintenance/labor field. To ensure that the subject remains familiar with skills related to employability, a Life Skills Training and Job Readiness program is also being recommended for this defendant

## Military

No military experience was related.

## Marital Status and Living Arrangements

The defendant is a single male, who denies paternity to any children; however, the defendant does report, fathering a child in 1987 that ended in an abortion due to the mother's ill health. Prior to his arrest in these cases, the defendant had been residing at 1301 7th St. Northwest, Washington, DC (#120) with his cousin, Ms. Belinda McManus, who he claims is addicted to illegal drugs. The defendant reported that he will not return to Ms. McManus's residence and will stay with a friend, Mr. Bill Michaels at 2509 Kingsway Road #201, Fort Washington Maryland. Notably, Mr. Michaels was contacted with regards to the defendant's proclaimed living arrangement. He reported that there is not adequate space available in his home for the defendant; however, following his release from jail, he will do all possible to assist him in locating suitable housing. Consequently, no home visit was conducted because at this juncture, the defendant has "no fixed" address.

## Financial Status

No assets and/or liabilities of consequence were related.

C:\Program Files\Neevia.Com\Document
Converter\temp\0qerdamuzihsyienavfwvbi5_289236_ReportSign.rtf

Court Services and Offender Supervision Agency

## Health

ₜ    The defendant reported that he suffers from sinus problems and Sarcoidosis, a respiratory problem. He takes prescribed medications to assist with his condition.  No psychological and/or psychiatric intervention was related.

*A pre-sentence report prepared in the year 2002 cited that the defendant suffered from pneumonia during his childhood years.*

## Substance Use/Abuse

The defendant related that in the year 1991, he began experimenting with heroin and cocaine. He reported that cocaine is his drug of choice which he abused daily, spending approximately $150.00 per day on the illicit substance. He reports that he only consumes alcohol on a social basis. With regards to treatment, the defendant reported that during a period of incarceration at Lorton in the year 1996, he participated in a 60- day drug treatment program.  In the year 1997, the defendant reportedly participated in four months of inpatient treatment at RAP Inc. The defendant acknowledges that he has a current substance abuse problem and has requested additional treatment.

*On September 12, 2006, the defendant was referred to the Central Intervention Team for a substance abuse Treatment assessment.  Treatment Specialists proffered the following information and recommendation:*

"Offender has a substance abuse history of alcohol (1-2Xwkly since age 31years old), cocaine (daily since age 33 years old and heroin (daily since age 44 years old). Although he received no detox, he completed 2-3 months of RAP in 1990, and completed a prison based program in 1998 or 1999.Based on offender's representation, drug use history and assessment tools used, the following is recommended: 28 days residential, aftercare to be determined, support groups in the community.

**_NOTE:  This treatment recommendation is based solely upon information obtained in the Assessor's clinical interview with the offender, assessment instruments, toxicology reports, and the documented history of substance abuse issues.  It is not a sentencing recommendation, but an evaluation of the offender's presenting substance abuse status.  The PSI writer can and will use additional sources of information and consider other factors in making a sentencing recommendation.  The final sentencing recommendation and treatment plan will encompass all factors derived from the investigative process; thus, the two recommendations may differ._**

The defendant initially began testing with the DC Pretrial Service Drug Testing Agency in the year 1993.  With regards to his arrest in these cases, the defendant was unable to void urine. However, available records reflect that the following positive test results:

C:\Program Files\Neevia.Com\Document
Converter\temp\0qerdamuzihsyienavfwvbi5_289236_ReportSign.rtf

Court Services and Offender Supervision Agency

Page 18

## INTERVENTION PLAN:

1. Narcotics treatment in a controlled setting followed by 28 day residential treatment, aftercare and support groups upon release,

2. Vocational training in maintenance/labor field,

3. Life skills and job readiness training.

4. Random drug testing.

5. Transitional housing.

6. Seek and maintain gainful employment.

Court Services and Offender Supervision Agency

## RECOMMENDATION:

**BASED ON CSOSA'S SOCIAL AND CRIMINAL INVESTIGATION WE RECOMMEND THE FOLLOWING SENTENCE: INCARCERATION**

## See below for Criminal history score and guideline compliant sentence:



| Docket: 2006-CF3-9216 | Count (s): 2 |
|---|---|
| Criminal History Score: 5.75 | Master Grid |
| Group #:7 | Column: D |
| 30-54 months confinement | |
| Prison only | |

| Docket: 2006-CF3-9217 | Count (s): 1 |
|---|---|
| Criminal History Score: 5.75 | Master Grid |
| Group #:7 | Column: D |
| 30-54 months confinement | |
| Prison only | |

Respectfully submitted:

C:\Program Files\Neevia.Com\Document
Converter\temp\0qerdamuzihsyienavfwvbi5_289236_ReportSign.rtf

Wendy Covay
Community Supervision Officer
(202) 442-1440

Approved by: _____
Karen McDaniel
Supervisory Community Supervision Officer
(202) 442-1441

Report Completed and signed:_____10-23-06



| Close | Open | Save | Print | Maint. | Docket | Parties | Notes | Tickler | Costs | Events | Docket | Group | Service | Sumry |

Release Status
Arrest Agency

Bond Amt
Badge #

Case JudgeWALTON, REGGIE B
Officer

Defendant (Criminal)

Full NameCEASAR, MAURICE N
D.O.B.  02/08/1960   S.S.N.
PDID   348504    DCDC#
DLN          DL St
Gender   Male    Race    *Black

1 of 1

Alias Name(s)CEASAR, MAURICE

1 of 3

Address Type Home Address
Address    1301 7TH ST NW

City/ST/Zip  WASHINGTON    DC 20017
Address Type Home Address
Address    1625 7TH STREET NE

City/ST/Zip  WASHINGTON,
          DC 20001-
Address Type Home Address
Address    NO FIXED ADDRESS

City/ST/Zip  WASH.,      DC

Attorney(s)
Code

0 of 0

1 of 5

Charge1  U996    Type:Pro
CCN    0673616 Arrest#    Arrest Dt
DescriptionATT TO COMMIT ARMED ROBBERY

Enhancement(s)    0 of 0

Charge2  U825    Type:Pro
CCN    0673616 Arrest#    Arrest Dt
DescriptionASLT W/I ROB WHILE ARMED

Enhancement(s)    0 of 0

Charge3  2825    Type:Ind
CCN    0673616 Arrest#    Arrest Dt
DescriptionASLT W/I ROB WHILE ARMED

Enhancement(s)    0 of 0

Charge4  2825    Type:Ind
CCN    0673616 Arrest#    Arrest Dt
DescriptionASLT W/I ROB WHILE ARMED

Enhancement(s)    0 of 0

Charge5  2825    Type:Ind
CCN    0673616 Arrest#    Arrest Dt
DescriptionASLT W/I ROB WHILE ARMED

Enhancement(s)    0 of 0

Next Event       Date/Time
Event Judge
Case Disp  Jury Trial    Disp Date06/30/1983
          Guilty

Linked Group(s)    0 of 0

Prosecutors         0 of 0
Agency      Full Name

Case Comments

Case Attributes
Case Number 1981 FEL 007641
Filed    12/31/1981
Status    Closed
Secret Case F    IncompleteF

To Be
Ordered

Exhibit-G _ 1 page

# DC Department of Corrections



## Face Sheet

| | | |
|---|---|---|
| **DCDC #:** 208880 | **Name:** CEASAR, MAURICE N | **PDID #:** 348504 |

**Commitment Date:** 05/17/2006     **Admission type:** PRETRIAL ALL OTHER TYPES

**Race:** BLACK     **DOB:** 02/08/1960     **Sex:** M     **Height:** 5' 10"     **Weight:** 158

**Sentence type:**     **Location:** CORRECTIONAL TREATMENT FACILITY

**Effective date:** 01/11/2007 **Short Term Date:** 04/09/2007     **Full Term Date:** 04/09/2007     **Parole Elig. Date:** 04/09/2007

**Agg. Sentence: 0 Years 0 Months 90 Days**          **0 Years 0 Months 90 Days**

**Jail credit:** 1 day(s)

---

**Charge notes:**     AS TO COUNT 1 - (24) TWENTY FOUR MONTHS IN JAIL, FOLLOWED BY (3) THREE YEARS SUPERVISED RELEASE. SENTENCED TO RUN CONCURRENTLY TO 2006 CF3 9216.

  **Please enter a Sentence date!**

---

**Case #:** 2006 CF3 009217          **Count 2**  **Theft Second Degree**          **Misdemeanor**

**Charge typ**  SENTENCING REFORM AMENDMENT ACT

**SENTENCED AND SERVING**

**Minimum sentence 0 year(s), 0 month(s), 90 day(s)**     **Maximum sentence 0 year(s), 0 month(s), 90 day(s)**

**Sentence Status:**   SENTENCING REFORM AMENDMENT ACT

**Judge:**  DIXON

| COMMITMENT DATE | OFFENSE DATE | HEARING DATE | CONVICTION DATE | SENTENCE DATE | DISPOSITION DATE | DISCHARGE DATE |
|---|---|---|---|---|---|---|
| 05/17/2006 | 04/17/2006 | 01/11/2007 | | 01/11/2007 | | |

**Charge notes:**     AS TO COUNT 2 - (90) NINETY DAYS IN JAIL.

  Sentence order is out of sequence. Sentence Order # 1.00 should be 3.00. Correct sequence order number and recalculate this charge, as well as, the Sentencing Summary Screen.

---

# Detainers

| |
|---|
| Detainer type |
| Agency |
| Released / release reaso |
| Release date |

---

EXHIBIT E     3 PAGES

# DC Department of Corrections



# Face Sheet

| | | |
|---|---|---|
| **DCDC #:** 208880 | **Name:** CEASAR, MAURICE N | **PDID #:** 348504 |
| **Commitment Date:** 05/17/2006 | **Admission type:** PRETRIAL ALL OTHER TYPES | |
| **Race:** BLACK | **DOB:** 02/08/1960    **Sex:** M    **Height:** 5' 10"    **Weight:** 158 | |
| **Sentence type:** | **Location:** CORRECTIONAL TREATMENT FACILITY | |

**Effective date:** 01/11/2007 **Short Term Date:** 04/09/2007    **Full Term Date:** 04/09/2007    **Parole Elig. Date:** 04/09/2007

**Agg. Sentence:** 0 Years 0 Months 90 Days          0 Years 0 Months 90 Days

**Jail credit:** 1 day(s)

---

# Sentencing notes

JAIL TIME CREDIT FOR CASE NO. 2006 CF3 009217(CT.2) FROM:04/17/2006 TO 04/17/2006=(1)DAY TOTAL J.T.C.

# Charges

**Case #:** 2006 CF3 009216          Count 3    **Burglary Two**                    Felon

Charge typ

**SENTENCED AND SERVING**

### Sentence Status:

Judge: **DIXON**

| COMMITMENT DATE | OFFENSE DATE | HEARING DATE | CONVICTION DATE | SENTENCE DATE | DISPOSITION DATE | DISCHARGE DATE |
|---|---|---|---|---|---|---|
| 05/17/2006 | 05/09/2006 | 01/11/2007 | | | | |

Charge notes:

 **Please enter a Sentence date!**

---

**Case #:** 2006 CF3 009217          Count 1    **Burglary Two**                    Felon

Charge typ

**SENTENCED AND SERVING**

### Sentence Status:

Judge: **DIXON**

| COMMITMENT DATE | OFFENSE DATE | HEARING DATE | CONVICTION DATE | SENTENCE DATE | DISPOSITION DATE | DISCHARGE DATE |
|---|---|---|---|---|---|---|
| 05/17/2006 | 05/10/2006 | 01/11/2007 | | | | |

# DC Department of Corrections
## Face Sheet



| | | |
|---|---|---|
| DCDC #: **208880** | Name: **CEASAR, MAURICE N** | PDID #: **348504** |

Commitment Date: **05/17/2006**    Admission type: **PRETRIAL ALL OTHER TYPES**

Race: **BLACK**          DOB: **02/08/1960**    Sex: **M**    Height: **5' 10"**    Weight: **158**

Sentence type:                    Location: **CORRECTIONAL TREATMENT FACILITY**

Effective date: **01/11/2007** Short Term Date: **04/09/2007**    Full Term Date: **04/09/2007**    Parole Elig. Date: **04/09/2007**

Agg. Sentence: **0 Years 0 Months 90 Days**          **0 Years 0 Months 90 Days**

Jail credit:    **1 day(s)**

Prepared and Certified by: _ROLLINS W. HUNTER_ _Rollins W. Hunter_ _01-16-2007_
Print                          Signature                    Date Prepared
Legal Instruments Examiner

_____    _____    _____
Print                          Signature                    Date Reviewed
Legal Instruments Examiner

| Charge Description | Sentence Description | Disp Date |
| --- | --- | --- |
| UCSA Possession Marijuana | Time Served / VVCCA: $50.00 | 7/17/1998 |

**File Date:** 8/28/1995

**Docket Number:** 1995-CMD-009760

| Charge Description | Sentence Description | Disp Date |
| --- | --- | --- |
| Shoplifting | Time Served | 12/13/1995 |

**File Date:** 6/23/1988

**Docket Number:** 1988-CMD-007262

| Charge Description | Sentence Description | Disp Date |
| --- | --- | --- |
| | Probation: 6 Months Unsupervised / Fine: $300.00 , Fine Suspend: $200.00 | 8/11/1988 |

**File Date:** 12/31/1981

**Docket Number:** 1981-FEL-007641

| Charge Description | Sentence Description | Disp Date |
| --- | --- | --- |
| Assault With Intent to Rob While Armed | Confinement: 42 Months To 20 Years | 12/18/1986 |
| Assault With Intent to Rob While Armed | Confinement: 42 Months To 20 Years | 12/18/1986 |
| Assault With Intent to Rob While Armed | Confinement: 42 Months To 20 Years | 12/18/1986 |

According to automated probation and parole records the defendant's parole was closed/revoked to incarceration on 10/24/04. According to the Bureau of Prison website the defendant was released on 11/11/05. PSA has no additional information regarding this matter.

**Pretrial Services has no interview information.**

Personal Background

Exhibit -H- (5 pages)

# D. C. PRETRIAL SERVICES AGENCY

## Pretrial Services Report

### United States vs. MAURICE CEASAR

DOB: 2/8/1960

PDID: 348504

Also known as:   David Hanson

Maurice Dawson

**Lockup #: 048**

**File Date:** 05/10/2006

Lockup Date: 5/10/2006

Date Prepared:   5/10/2006

Date Printed:   5/10/2006

**Docket Number:**

PSA Case #: 06130889

## Charge(s)

Burglary II

Burglary II

**Comments:**   According to the United States Marshal Service, the defendant was brought to the cell block today for arraignment court.  PSA called the defendant's name and lock-up number multiple times, however, the defendant failed to answer.  As a result, PSA has no personal, address or employment information for the defendant.

## Detention Eligibility and/or Administrative Procedures

According to information available to the D.C. Pretrial Services Agency, the following applies:

§23-1322(b)(1)(A) – Defendant has been charged with a dangerous crime or a violent crime.

## Recommendations

PSA General Supervision for Superior Court (SC)

Release Conditions:

1. Report to Pretrial Services Agency (PSA) room C-220 for evaluation and if positive program placement by PSA.

2. Report to Pretrial Services Agency (PSA) weekly Specify if other selected: Report in person.

3. Stay away from and have no contact with: complaining witness.

4. Verify your address with Pretrial Services Agency (PSA) within 24 hours.

Comments:

PSA was unable to conduct a complete background check on this defendant due to the National Crime Information Center system being down.

Based on criminal history the defendant is ineligible for the Superior Court Drug Intervention Program (Drug Court).

Criminal History

**Last complete record check conducted on:** 06/24/1988

### Prior Conviction(s)

| **File Date:** 1/16/2002 | **Docket Number:** 2002-FEL-000341 | |
|---|---|---|
| **Charge Description** | **Sentence Description** | **Disp Date** |
| Burglary II | Confinement: 1 Years / VVCCA: $100.00 | 7/19/2002 |

According to the Bureau of Prison Website the defendant was released on 11/10/03.

| **File Date:** 11/21/1998 | **Docket Number:** 1998-FEL-008487 | |
|---|---|---|
| **Charge Description** | **Sentence Description** | **Disp Date** |
| Escape from institution | Confinement: 5 Months To 15 Months / VVCCA: $500.00 | 4/30/1999 |

DC Jail records does not reflect an exact release date in this matter. PSA has no additional information regarding this matter.

**File Date:** 5/7/1998        **Docket Number:** 1998-CMD-006639

## Community Ties

Place of Birth:

DC Area resident for:

Total Time in Area:

Marital Status:

Children:    No

Last Updated Date:    05/10/2006

Verified: No

Relatives Living With Defendant:

None

Relatives Not Living With Defendant:

None

## Citizenship

US Citizen:    Yes

Passport:    Defendant reports not having a passport

Last Updated Date:    05/10/2006

## Address Information

No address information is available.

## Employment Information

No employment information is available.

## Education Information

No education information is available.

## Health Information

No health information is available.

## Substance Abuse Information

## Self Reported:

No substance abuse information is available

## Drug Test:

Label Printed (temporary)

Prepared By:  Sheena Hungerford

Prepared Date: 5/10/2006



Government of the District of Columbia
## DEPARTMENT OF CORRECTIONS
### OCCOQUAN FACILITY
Box 85
Lorton, Virginia 22199

MEMORANDUM

February, 26 1999

TO          :  Reclassification

FROM        :  B. A. McNair, LICSW
               Psychological Services

SUBJECT     :  Interim Treatment Program Report:
               Purpose Group & Psychological Counseling
               Group

RE          :  Maurice Caesar, DCDC #208-880

Mr. Caesar is a participant in The Substance Abuse treatment
Program sponsored by the Psychological Services Department. His
attendance began January 07, 1998 and will concluded April, 1999,
(approximately 120 days).

The  purpose group seeks to acquaint the participant with the
spiritual aspects of recovery. The group deals with the
individuals' God given purpose in life; and with the God of their
understanding, undertake the personal responsibility to live free
of substance and other influences that dominate ones' life in a
negative manner.

Psychological counselling assist the inmate in examining
aspects of their psychological needs and social developmental
patterns that predisposed one to criminal behavior and substance
abuse.

Mr. Caesar is a 38 year old Washingtonian. He is a high school
graduate with a year of studies in Music and Business Management
from the University of Hartford in Connecticut.

His unfortunate history with the criminal justice system began In
December, 31, 1981. Reported he was arrested for a charge that he
contends to this day was not committed by him.  His codefendant,
the one who allegedly carried or wielded the gun was acquitted
after political rallies were organized to protest the seemingly
miscarriage of justice. However, Mr. Caesar had already been to
trial by that time and convicted on the re-trial. His original
sentence was reduced later at his petition, and with the  support
of the political activists who were concerned with his case due

EXHIBIT -I

(2 pages)

to all the irregularities and inconsistencies with the evidence. After three and a half years in prison, he was his release from prison in 1987, on the original four to twenty year sentence. Upon his release, he did well for awhile. He worked for a company transcribing depositions for attorneys, and was later promoted to a supervisory position with that firm. After leaving that job he opened a small business, a music studio, which prospered rapidly. At the zenith of his business success he had over 81 clients and brought in revenues in excess of $350,000 annually. His romance with success ended abruptly when he an affair of the heart (with his fiancee and common-law wife) went sour and crushed him emotionally. He responded to his pain by socializing with his sympathizers in the entertainment field, most of whom were clients that abused substances; and thus he was introduced to the users lifestyle. In 1991 he violated his parole because of using substances. Since then he has been in and out of Lorton four or five times to date. All charges were related to violation of parole on the original charge, ie. not reporting, which was assumed to be because of positive urinalysis. There was never a conviction for new criminal conduct in his case.

This time he was re-incarcerated due to a late return to the halfway house. He was seen on the escape charge on 11/21/99 and and the charges were dismissed. He was sent back to the jail to await hearing from the housing board. However, he was sent back to Occoqnan to wait for the hearing, but however, the escape charge came up again and he was in court 1/26 to receive the indictment on the escape. On the 29/Jan he was given personal recognizance to report back for an arraignment March 5, 1999.

Information on the computer at the parole board stated that his status is still one of being in the half-way house, awaiting a final rehearing to determine if he should remain there. Part of the mix-up could be related to the error in his files that classified his halfway house infraction under a code that made it seem as if he escaped from the prison institution itself.

Mr. Caesar has been drug free for the past two years. He impresses this therapist as genuine in his motivation to substance free. He is an extremely talented man, and capable of managing a business. However, He will need to select a sponsor to work the twelve step recovery in dept, and to have a mentor/counselor on hand to provide him support and encouragement as he encounters the normal stresses of attempting to re-enter the community, maximize his potential, making a living, while maintaining abstinence.